**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (CA SBN 213478)
Email: justin.balser@akerman.com
BRYAN M. LEIFER (SBN 265837)
Email: bryan.leifer@akerman.com
725 South Figueroa Street, 38th Floor
Los Angeles, California 90017-5433
Telephone: (213) 688-9500
Facsimile: (213) 627-6342

**AKERMAN SENTERFITT LLP**
JUSTIN D. BALSER (CA SBN 213478)
Email: justin.balser@akerman.com
The Kittredge Building
511 Sixteenth Street, Suite 420
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714

Attorneys for AURORA LOAN SERVICES LLC
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.

FILED
CLERK, U.S DISTRICT COURT

JAN 2 8 2011

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JOAN HOYMAN<br><br>          Plaintiff,<br><br>v.<br><br>FIRST MAGNUS FINANCIAL CORP;<br>COUNSEL FOR AURORA LOAN<br>SERVICING GAYLE JAMESON,<br>ESQ.MCCARTHY & HOLTHUS;<br>AURORA LOAN SERVICES;<br>COUNTRYWIDE HOME<br>LOANS/BANK OF AMERICA HOME<br>LOAN SERVICING; MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEMS; DOES 1-100,<br><br>          Defendants. | Case No. CV11- 00891 SVW (JEMx)<br><br>**NOTICE OF REMOVAL OF<br>ACTION TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1331, 1332]<br><br>[Los Angeles County Superior Court<br>Case No. GC046621]<br><br>Complaint Filed:    January 5, 2011<br>Trial Date:    None |

{LA087441;1}

1

NOTICE OF REMOVAL

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Defendants Aurora Loan Services LLC (**Aurora**) and Mortgage Electronic Registration Systems, Inc. (**MERS**) pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, hereby remove this action from the Superior Court of the County of Los Angeles to the United States District Court for the Central District of California, and states as follows:

## I.    STATEMENT OF THE CASE

1.    On January 5, 2011, plaintiff Joan Hoyman commenced an action in the Superior Court of the County of Los Angeles, styled *Joan Hoyman, et al. v. First Magnus Financial Corp., et al.*, Case No. GC046621. A copy of the complaint in that action is attached hereto as part of **Exhibit 1**.

2.    Plaintiff asserts six causes of action, which she characterizes as follows: (1) quiet title, (2) wrongful foreclosure, (3) fraud, (4) civil conspiracy, (5) lack of due process, and (6) exemplary damages. (Complaint dated January 5, 2011 (**Compl.**), p. 1.)

3.    Plaintiff alleges these causes of action against Aurora, a Colorado Corporation, counsel for Aurora, Ms. Gayle Jameson, First Magnus Financial Corporation, an Arizona corporation and current debtor in chapter 11 bankruptcy proceedings, BAC Home Loans Servicing, L.P., erroneously sued as "Countrywide Home Loans/Bank of America Home Loans Servicing," a Texas limited partnership, MERS, a Virginia Corporation, and Does 1 through 100. (Compl., p. 1).

## II.    FEDERAL QUESTION JURISDICTION

4.    This Court has jurisdiction over this matter under 28 U.S.C. § 1331 because plaintiff's claims arise under the laws of the United States. A case arises under federal law where the vindication of a right under state law necessarily turns on some construction of federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983).

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

5.     Adjudication of plaintiff's complaint requires an analysis and construction of federal law, in particular the the Fair Debt Collection Practices Act (**FDCPA**), 15 U.S.C. §§ 1692, *et seq.*, the Real Estate Settlement Procedures Act (**RESPA**), 12 U.S.C. 2601, *et seq.* (*See e.g.*, Compl., ¶¶ 15, 34-36). Plaintiff also alleges she is entitled to rescind the loan under the Truth-in-Lending Act (**TILA**), 15 U.S.C. §§ 1601, *et seq.* (Compl., ¶¶ 17-20, 21-22.)

6.     The Court has supplemental jurisdiction over the remaining state law claims because they "form part of the same case or controversy." 28 U.S.C. § 1367(a). A state claim is part of the same case or controversy if it shares a "common nucleus of operative fact" with the federal claim, and if they would normally be tried together. *E.g.*, *Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). The facts related to state law claims are intertwined with the events underlying the federal allegations under RESPA, FDCPA and TILA. The Court should extend supplemental jurisdiction over all of plaintiff's state law claims.

## III.    DIVERSITY JURISDICTION

7.     This Court also has jurisdiction to hear this matter under 28 U.S.C. § 1332 because of the complete diversity of citizenship of the parties.

8.     Plaintiff is a citizen of California. [*See* Compl., ¶¶ 3 (alleging under penalty of perjury that plaintiff resides at the property located in Altadena, California.)].

9.     Defendant Aurora Loan Services is a limited liability company organized under Delaware law. For purposes of determining diversity of citizenship, a limited liability company has the citizenship of its members. The only member of Aurora Loan Services LLC is Aurora Bank FSB, a federal savings association. Pursuant to an amendment to the Home Owners' Loan Act, codified at 12 U.S.C. § 1464(x), a federal savings association's citizenship for diversity purposes is "the state in which such savings association has its home office." Aurora Bank FSB has its home office in

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL: (213) 688-9500 – FAX: (213) 627-6342

Wilmington, Delaware, as set forth in its federal stock charter, dated June 30, 1999, as attested by the bank and the corporate secretary of the Office of Thrift Supervision.  A copy of the federal stock charter is annexed hereto as **Exhibit 2**.  Therefore, Aurora Bank FSB is a citizen of Delaware.[1]  By extension, Aurora Loan Services LLC is also a Delaware citizen.

10.   Defendant First Magnus Financial Corporation was an Arizona corporation prior to being administratively dissolved. (*See* **Exhibit 3**).  Defendant First Magnus is also a current chapter 11 debtor in United States Bankruptcy Court for the District of Arizona in Tucson, Arizona under case number 4-07-bk-01578-JMM.

11.   Defendant Mortgage Electronic Registration Systems, Inc. (**MERS**) is a corporation formed under the laws of the State of Delaware with its principal place of business in the State of Virginia.  MERS is therefore a citizen of Delaware and Virginia, but not California.

12.   BAC Home Loans Servicing, L.P., erroneously named "Countrywide Home Loans/Bank of America Home Loans Servicing" is a Texas limited partnership. "A partnership is deemed to be a citizen of all of the states of which its partners, limited and general, are citizens." *U.S. v. Pinkard Const. Co.*, Civil Case No. 09-cv-00491-PAB-MJW, 2009 WL 2338116, at *2 (D. Colo. July 28, 2009) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)). BAC's members consist solely of BANA LP, LLC, and BAC GP, LLC, both of which are limited liability companies.

a.   BANA LP, LLC and BAC GP, LLC are citizens of Nevada.  They are wholly- owned by Bank of America, N.A.

b.   Bank of America, N.A. is a citizen of North Carolina because that is where its main office is located, according to its articles of association. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307, 126 S.Ct. 941, 945 (2006) ("[A]

---

[1]   A copy of the Secretary Certificate attesting to the change of name from Lehman Brothers Bank FSB to Aurora Bank FSB is also included as part of Exhibit 2.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

1  national bank, for § 1348 purposes, is a citizen of the State in which its main office, as

2  set forth in its articles of association, is located."); *see also Hill v. Bank of America*

3  *Corp.*, No. 06-cv-804GE, 2006 WL 1518874, at *1 (N.D. Ga. May 30, 2006) ("Bank of

4  America, N.A. . . . . is a national banking association located in the State of North

5  Carolina, as designated in its articles of association.").

6  　　　13.  Gayle Jameson, Esq. was the attorney of record for Aurora in the unlawful

7  detainer action against plaintiff.  Jameson is a citizen of California.  Jameson has not

8  yet been served, but, even if she has, her citizenship does not impact diversity because

9  she was fraudulently joined to this action. *See, e.g., Gardner v. UICI*, 508 F.3d 559,

10  561 (9th Cir. 2007).  In order to prove fraudulent joinder, the defendant must prove that

11  "the plaintiff fails to state a cause of action against a resident defendant, and the failure

12  is obvious, according to the settled rules of the state. . . ." *Mercado v. Allstate Ins. Co.*,

13  340 F.3d 824, 826 (9th Cir. 2003) (citing *McCabe v. General Foods Corp*, 811 F.2d

14  1336, 1339 (9th Cir. 1987)).  The only conceivable reason Jameson was added to this

15  action is to destroy diversity.  The only time Jameson is mentioned in the complaint is

16  in paragraph 4 which reads as follows:

> Defendant GAYLE JAMESON, ESQ. is an attorney registered to conduct
> business in the State of California and can be served with citation by
> service upon ITS PLACE OF BUSINESS AT McCarthy & Holthus, 1770
> Fourth Avenue, San Diego, CA 92101. Defendant is a lawyer who claims
> to represent Aurora Loan Servicing (sic) but has failed to properly
> investigate the client's standing and the validity of the documents
> associated with this lawsuit, in violation of the State Bar Rules for the
> State of California.

23  (Ex. 1, Compl., ¶ 4) Jameson was not a party to the loan agreement; her client, Aurora,

24  was.  She had no personal responsibility for making disclosures, has no claim to title to

25  the property, owed not duty of care to plaintiff, and is not even alleged to be personally

26  enriched by the loan.  Plaintiff's naming of Jameson makes no sense, the only logical

27  conclusion being that she is fraudulently joined.

28

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

14.   The amount in controversy requirement is also met.   In the complaint, plaintiffs disputes her debt under the FDCPA.   (Compl., ¶ 15) Therefore, she essentially seeks a declaration that the security interest is void.   The original loan amount was $706,000.00. (*See* Exhibit 1).   Plaintiff also requests equitable relief in setting aside the foreclosure sale and declaring plaintiffs as the owners of the property. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002).   The value of the object of this litigation—the real property at issue—is well over $75,000.   According to the trustee's deed upon sale, the underlying property was sold at foreclosure for $745,594.89. (*See* Exhibit 1, Compl., ¶ 26).

## IV.   ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

15.   Removal of this action is timely. The complaint was filed on January 5, 2011. Aurora and MERS have not yet been served with the complaint, nor have any of the other defendants. The Complaint does not contain a proof of service. (*See* **Exhibit 1**). The state court's docket does not indicate an proof of service filed as to any defendant. (*See* **Exhibit 4**, docket as of January 27, 2011).

16.   There is no record of any other defendant being served with the complaint. DOES 1 to 100 have not been named or served, and their consent is therefore not required. *Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1428 (9th Cir. 1984), *overruled on other grounds by Ethridge v. Harbor House Restaurant*, 861 F.2d 1389 (9th Cir. 1988), *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (the requirement for consent applies "only to defendants properly joined and served in the action.").

17.   Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all of the process, pleadings, and orders on file in the State Court Action are attached hereto as **Exhibit 5**.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## V.    CONCLUSION

18.    By this notice of removal and the associated attachments, defendants Aurora and MERS do not waive any objections it may have as to service, jurisdiction or venue, or any other defenses or objections it may have to this action.  Aurora and MERS intend no admission of fact, law or liability by this notice, and expressly reserve all defenses, motions and/or pleas.  Aurora and MERS pray that the State Court Action be removed to this Court, that all further proceedings in the state court be stayed, and that defendants receive all additional relief to which they are entitled.

Dated: January 28, 2011                    Respectfully submitted,

                                           **AKERMAN SENTERFITT LLP**

                                           By:_____
                                                Bryan M. Leifer
                                           Attorneys for Defendants
                                           AURORA LOAN SERVICES LLC and
                                           MORTGAGE ELECTRONIC
                                           REGISTRATION SYSTEMS, INC.

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# EXHIBIT 1

1
2   Joan Hoyman
   1351 Pleasantridge Dr
3   Altadena, CA 91001
4   DEFENDANT IN PRO PER
5
6
7
8
9        **SUPERIOR COURT OF CALIFORNIA**
     **LOS ANGELES COUNTY – NORTHEAST JUDICIAL DISTRICT**
10     Pasadena Courthouse, 300 East Walnut Ave, Pasadena, CA 91101
11

| 12 Joan Hoyman, | Case No.     G C 0 4 6 6 2 1 |
| --- | --- |
| 13        Plaintiff, | COMPLAINT FOR QUIET TITLE, |
| | WRONGFUL FORECLOSURE, |
| 14      v. | FRAUD, |
| | CIVIL CONSPIRACY, |
| 15 | LACK OF DUE PROCESS, |
| 16 **First Magnus Financial CORP;** | EXEMPLARY DAMAGES |
| **Counsel for Aurora Loan Servicing Gayle** | |
| 17 **Jameson, Esq.McCarthy & Holthus;** | Hon: |
| **Aurora Loan Services;** | Dept. |
| 18 **Countrywide Home Loans/Bank of America** | |
| **Home Loan Servicing;** | Date: |
| 19 **Mortgage Electronic Registration Systems;** | Time:    8:30 am |
| 20 Does 1-100 | |
|       Defendants. | Action Filed: January 5, 2011 |
| 21 | |

22   **TO THE HONORABLE JUDGE OF SAID COURT:**
23

24     1) COMES NOW, Joan Hoyman, hereinafter referred to as Plaintiff, and files this Original
25   Petition.  In support of this verified petition, the Plaintiff would show as follows:
26
27
28                  **I. DISCOVERY**

1

ORIGINAL FILED
LOS ANGELES
SUPERIOR COURT
JAN -5 2011

2) Discovery in this matter is intended to be conducted under Rules of Civil Procedure for this state at the highest level allowed by law.

## II. PARTIES

3) Plaintiff is a woman, Joan Hoyman, who lives at 1351 Pleasantridge Drive, Altadena, CA 91001.

4) Defendant GAYLE JAMESON, ESQ. is an attorney registered to conduct business in the State of California and can be served with citation by service upon ITS PLACE OF BUSINESS AT McCarthy & Holthus, 1770 Fourth Avenue, San Diego, CA 92101. Defendant is a lawyer who claims to represent Aurora Loan Servicing but has failed to properly investigate the client's standing and the validity of the documents associated with this lawsuit, in violation of the State Bar Rules for the State of California.

5) Defendant Aurora Loan Services LLC is a corporation located at 10350 Meadows Drive, Littleton, CO 80124. Defendant claims to have servicing authority over a loan taken out by Joan Hoyman. However, Defendant has no standing to proceed in this transaction as it is not a real party in interest to these proceedings. Nevertheless, Defendant is proceeding anyway, without reflection on Plaintiff's legal rights. Defendant can be served with citation by service at its place of business.

6) Defendant Countrywide Home Loans was the original lender to the property that is the subject of this dispute. It can be served by citation of service through certified mail at its place of business. Countrywide was believed to be merged into Bank of America as a part of the TARP bailout by Congress.

7) Defendant MERS ("MERS") is a privately held company that operates an electronic registry designed to track servicing rights and ownership of mortgage loans in the U.S. an

2

COMPLAINT FOR QUIET TITLE

electronic registration company who can be served at 1818 Library Street, Suite 300, Reston, VA 20190.   MERS is the subject of numerous lawsuits and has produced numerous depositions related to fraudulent loan practices in the mortgage industry.   Defendant can be served by citation at its place of business.

## III. JURISDICTION AND VENUE

8) Venue is proper in Los Angeles County, California, pursuant to California Civil Code and since the property that is the subject of this suit is located in this county.   Jurisdiction is conveyed upon this court by the California Constitution, the California Business Practices Code, and the California Real Estate Code.

## IV. PROPERTY

9) The Real Property description which is the subject of this suit is as follows:

Parcel 1:

Lot 11 and the northerly 15 feet of lot 12 of tract no. 26758, in the country of Los Angeles, State of California, as per map recorded in Book 703 pages 84 to 86 inclusive of maps, in the Office of the County Recorder of Said County.

Parcel 2:

An Easement for ingress and egress over the southerly 25 feet of the easterly 15 feet of lot 10 of tract no. 26758, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 703 pages 84 to 86 inclusive of maps, in the office of the County Recorder of said county.

Commonly known as 1351 Pleasantridge Drive, Altadena, CA 91001.

10) The Personal Property which is the subject of this suit is as follows:

3

COMPLAINT FOR QUIET TITLE

A certain Original Deed of Trust signed by Joan Hoyman on August 16, 2006

and a certain Original Promissory Note of the same date, signed by Joan Hoyman

and made payable to First Magnus Financial Corporation.

## V. BACKGROUND FACTS

11) Plaintiff, in good faith, believing she had received money from First Magnus Financial

Corporation, then Aurora and Countrywide Home Loans, exchanged an Original Promissory

Note and Deed of Trust with First Magnus Financial Corporation on August 16, 2006. First

Magnus Financial Corporation made material representations to Plaintiff, upon which she

relied in exchanging properties with said corporation.

12) Countrywide represented that it had loaned Plaintiff $838,375 when in fact, it had

not.

13) Plaintiff has subsequently investigated the securitization, (pooling and servicing) of

her note to the best of her ability and although there are few recorded documents of record,

Plaintiff has discovered that an investment banking firm in New York is the holder of the

original note.

14) Plaintiff has reason to believe and does believe that discovery will lead to a number of

forged and fraudulent documents in the chain of title of Plaintiff's property.

15) When Plaintiff was threatened with notice of acceleration, she sent a dispute letter

pursuant to the Fair Debt Collection Practices Act to aurora loan servicing, noticing it of the

dispute of debt. When a dispute of debt is issued, all collection activity must cease until the

issue is resolved. The dispute was never answered and collection of a debt continued

unimpeded. It is alleged that a foreclosure sale took place on September

16) Plaintiff was served with a notice of forcible detainer on or about November 6th, 2009.

## VI.  QUIET TITLE ACTION

4

17) Plaintiff seeks a declaration from the Court that Plaintiff is the true and valid owner of the property in question. Lending companies are subject to the Truth in Lending Act and other regulations, however, there is no regulatory body over said Act, it is self policing, and the assumption is made the Act itself will keep companies in compliance. Such is not the case in this instance. When a finite number of irregularities or misrepresentations occur, the lien is declared void and the property reverts to the owner, the victim of the fraud and misrepresentation, and bestows upon her a clear title.

18) Countrywide, its successors and assigns, made material misrepresentations to Plaintiff. The misrepresentations were made with knowledge of their falsity, the misrepresentations were made with the intention that they should be acted upon by Plaintiff, and Plaintiff relied upon the misrepresentations and has suffered injury.

19) Countrywide's actions and that of its successors and assigns were so egregious and fraudulent, as to render its lien and note void.

20) It is Plaintiff's belief that Countrywide immediately pledged her Original Promissory Note to a trust which had been set up by an investment banking firm from New York. Plaintiff will obtain documentation of the pledge upon completing discovery.

21) It is the policy and practice of the investment banking firms to engage in fraudulent activities in regard to the mortgage industry. For example, On or about July 12, 2009, an investor in Morgan Stanley Capital 1 Inc. mortgage Pass-Through Certificates filed a proposed securities class action lawsuit in the U.S.District Court for the Southern District of New York, on behalf of all persons or entities who acquired pass through certificates in Morgan Stanley pass through accounts, including MORGAN STANLEY MORTGAGE LOAN TRUST 2007-13. The suit alleges false and misleading Registration Statements and

Prospectus Supplements issued between December 2005 and November 2007 to entice investors to buy Morgan Stanley funds.

22) The cut off date for mortgages was September 1, 2007 and the closing date was September 28, 2007.  The prospectus names Morgan Stanley Mortgage Capital Holdings LLC as seller, Wells Fargo Bank, NA as master servicer and securities administrator and LaSalle Bank NA as trustee.  Two recent books written about the fraud from the investment banking companies are "All the Devils are Here" by Bethany McLean, co-author of the "Smartest Guys in the Room" and "The Big Short" by Michael Lewis, author of "Liars Poker".

## VII. WRONGFUL FORECLOSURE

23) In the State of California, title to real property and ownership of same, as it applies to the public at large, is determined from the records in the County Clerk's Office.

24) Plaintiff alleges Defendants committed wrongful foreclosure.  In the Notice of Acceleration sent to Plaintiff, it is asserted that Aurora Loan Servicing is the creditor.

25) Plaintiff has searched the real property records of Los Angeles County and found that the documents related to the Mortgage were fabricated in a "foreclosure mill",

26) On June 24th, 2009, Quality Loan Services, acting as Substitute Trustee, allegedly sold Plaintiff's real property at a foreclosure sale to Aurora Loan Serives,, LLC for payment of the sum  $745,594.89.

27) The Appointment of Substitute Trustee is not timely filed, making the foreclosure a nullity.  An appointment of Substitute Trustee must be filed for public record 21 days in advance of sale.

28) The Appointment of Substitute Trustee is fraudulent.

COMPLAINT FOR QUIET TITLE

29) Assuming her note to have been securitized and filed with the SEC, Plaintiff can find no report of default of note which has been reported to the SEC by defendants.

## VIII. FRAUD

30) Plaintiff alleges fraud against the Defendants.  Fraud requires a showing that Defendants knowingly made a material representation that was false with the intent that Plaintiff relied upon that was false with the intent that Plaintiff rely upon that representation which caused Plaintiff injury.

## IX. CIVIL CONSPIRACY

31) The Defendants collectively engaged in actions which they knew would result in harm to Plaintiff.  To accomplish their objective, Defendants engaged in predatory lending practices and executed a sham foreclosure to cut off Plaintiff's legal rights.  Their agreement to perform this foreclosure proximately caused injury to Plaintiff.

## X. LACK OF DUE PROCESS

32) When, in good faith, Plaintiff exchanged her Genuine Original Promissory Note and Genuine Original Deed of Trust for her home at 1351 Pleasantridge Drive, Altadema, CA 91001, he had no knowledge that Defendants would conspire to take her personal property and use it for the generation of equity, gains, securitization, TARP bail outs and all manner of schemes which are just now coming to light in the public arena.  It is a fact that Defendants generated far more than the alleged loans amounting to $838,375.00 through the use of Plaintiff's chattel.  The case can be made that when the exchange took place, even if Plaintiff had never paid a dime in payments, Defendants have recovered tens of times over the amount allegedly loaned.

COMPLAINT FOR QUIET TITLE

33) Plaintiff makes the claim that the exchange was an even trade. She got the home, the banks got the note and deed of trust to do with as they pleased.

34) Now, Defendants would renege on the exchange and take the home, the note, the deed of trust and all equity, gains and other assets, funds from the securitization, fractionalization, insurance pay outs, government "bail outs", TARP money and other payments unknown at this time.

35) In the interest of fairness, equity, and due process, Plaintiff asserts that Defendants can not take everything concerned with the agreement.

36) In order to obtain due process, Plaintiff makes a claim on her Genuine Original Promissory Note and Genuine Original Deed of Trust and demands that before possession of the home can be finalized by Defendants, that those documents, together with all interest, equity and all gains generated therefrom, be returned to her.

37) Plaintiff, in order to obtain due process, is claiming the right of replevin.

## XI. EXEMPLARY DAMAGES

38) Plaintiff's injury resulted from Defendants' actual fraud or malice, which entitles Plaintiff to exemplary damages under California Civil Practices & Remedies Code Additionally, Defendants violated California Practices & Remedies Code with actual awareness of the falsity of Defendants' representation, which entitles Plaintiff to exemplary damages.

## XII. ATTORNEY'S FEES

39) It is further shown unto the Court that should it become necessary for Plaintiff to engage the legal services of an attorney to protect Plaintiff's rights and claims against

COMPLAINT FOR QUIET TITLE

Defendants and to prosecute its claims therein,  Plaintiff will request reasonable attorney's fees pursuant to California Practices & Remedies Code and California Business Code.

## XIII. PRAYER

40) WHEREFORE, PREMISES CONSIDERED, Plaintiff, Joan Hoyman prays that Defendants be cited to appear and answer herein, and that upon final hearing, Plaintiff received Declaratory Judgment and other relief described as follows:

1) That this Court order Joan Hoyman's personal property, her Genuine Original Promissory Note and Genuine Original Deed of Trust be returned to her before clear title can vest from Defendants to any other party;

2) That the Court further order upon return of Joan Hoyman's personal property, all equity, interest, and any and all gains generated from the use of her personal property by Defendants or any other entity, be returned to her with her documents;

3) That if Defendants are unable to return Plaintiff's personal property in its original condition together will all equities generated therefrom, that the Defendants pay damages pursuant to an action in Trover of the amount of the property plus three times its value in ;the amount of $2,515,129.00, as punitive damages.

4) In lieu of the above, that release of liens be executed and filed which reflect Joan Hoyman's Elm Tree Trust as sole owner of the property in question with no encumbrances.

(2) Actual damages;

(3) Exemplary damages;

(4) Prejudgment and post judgment interest;

9

COMPLAINT FOR QUIET TITLE

(5) Attorney's fees;

(6) Cost of suit; and

(7) Such other and further relief, both at law or in equity, to which it may show itself justly entitled.

Respectfully,

*Joan Hoyman*

Joan Hoyman
1351 Pleasantridge Drive
Altadena, CA 92001ffff

**VERIFICATION**

## VERIFICATION

I certify that my name is Joan Hoyman, that I am above the age of the majority, that I have personal knowledge of the facts presented herein, and that I am fully competent to testify to those facts. I certify the foregoing facts under the penalty of perjury.

*Joan Hoyman*

Joan Hoyman

10

COMPLAINT FOR QUIET TITLE

# EXHIBIT 2

Charter No. 6947

# FEDERAL STOCK CHARTER

## LEHMAN BROTHERS BANK, FSB

SECTION 1. Corporate Title. The full corporate title of the savings bank is Lehman Brothers Bank, FSB.

SECTION 2. Office. The home office shall be located in Wilmington, Delaware.

SECTION 3. Duration. The duration of the savings bank is perpetual.

SECTION 4. Purpose and powers. The purpose of the savings bank is to pursue any or all of the lawful objectives of a Federal savings bank chartered under section 5 of the Home Owners' Loan Act and to exercise all of the express, implied, and incidental powers conferred thereby and by all acts amendatory thereof and supplemental thereto, subject to the Constitution and laws of the United States as they are now in effect, or as they may hereafter be amended, and subject to all lawful and applicable rules, regulations, and orders of the Office of Thrift Supervision ("Office").

SECTION 5. Capital Stock. The total number of shares of all classes of the capital stock that the savings bank has the authority to issue is six million (6,000,000), of which five million (5,000,000) shall be common stock of par value of $1.00 per share and of which one million (1,000,000) shall be preferred stock, par value $1.00 per share. The shares may be issued from time to time as authorized by the board of directors without further approval of shareholders, except as otherwise provided in this section 5 or to the extent that such approval is required by governing law, rule, or regulation. The consideration for the issuance of the shares shall be paid in full before their issuance and shall not be less than the par value. Neither promissory notes nor future services shall constitute payment or part payment for the issuance of shares of the savings bank. The consideration for the shares shall be cash, tangible or intangible property (to the extent direct investment in such property would be permitted), labor, or services actually performed for the savings bank, or any combination of the foregoing. In the absence of actual fraud in the transaction, the value of such property, labor, or services, as determined by the board of directors of the savings bank, shall be conclusive. Upon payment of such consideration, such shares shall be deemed to be fully paid and nonassessable. In the case of a stock dividend, that part of the retained earnings of the savings bank that is transferred to common stock or paid-in capital accounts upon the issuance of shares as a stock dividend shall be deemed to be the consideration for their issuance.

Except for shares issued in the initial organization of the savings bank or in connection with the conversion of the savings bank from the mutual to the stock form of capitalization, no shares of capital stock (including shares issuable upon conversion, exchange, or exercise of other securities) shall be issued, directly or indirectly, to officers, directors, or controlling persons of the savings bank other than as part of a general public offering or as qualifying shares to a

053113-1038-00697-99SFAVCH-DYH

2

director, unless there issuance or the plan under which they would be issued has been approved by a majority of the total votes eligible to be cast at a legal meeting.

Nothing contained in this section 5 (or in any supplementary sections hereto) shall entitle the holders of any class or a series of capital stock to vote as a separate class or series or to more than one vote per share, except as to the cumulation of votes for the election of directors, unless the charter otherwise provides that there shall be no such cumulative voting; Provided, that this restriction on voting separately by class or series shall not apply:

(i)     To any provision which would authorize the holders of preferred stock, voting as a class or series, to elect some members of the board of directors, less than a majority thereof, in the event of default in the payment of dividends on any class or series of preferred stock;

(ii)    To any provision that would require the holders of preferred stock, voting as a class or series, to approve the merger or consolidation of the savings bank with another corporation or the sale, lease, or conveyance (other than by mortgage or pledge) of properties or business in exchange for securities of a corporation other than the savings bank if the preferred stock is exchanged for securities of such other corporation; Provided, That no provision may require such approval for transactions undertaken with the assistance or pursuant to the direction of the Office or the Federal Deposit Insurance Corporation;

(iii)   To any amendment which would adversely change the specific terms of any class or series of capital stock as set forth in this section 5 (or in any supplementary sections hereto), including any amendment which would create or enlarge any class or series ranking prior thereto in rights and preferences. An amendment which increases the number of authorized shares of any class or series of capital stock, or substitutes the surviving savings bank in a merger or consolidation for the savings bank, shall not be considered to be such an adverse change.

A description of the different classes and series (if any) of the savings bank's capital stock and a statement of the designations, and the relative rights, preferences, and limitations of the shares of each class of and series (if any) of capital stock are as follows:

A.      Common stock. Except as provided in this section 5 (or in any supplementary sections thereto) the holders of the common stock shall exclusively possess all voting power. Each holder of shares of common stock shall be entitled to one vote for each share held by such holder and there shall be no right to cumulate votes in an election of directors;

Whenever there shall have been paid, or declared and set aside for payment, to the holders of the outstanding shares of any class of stock having preference over the common stock as to the payment of dividends, the full amount of dividends and of sinking fund, retirement fund, or other retirement payments, if any, to which such holders are respectively entitled in preference to the common

3

stock, then dividends may be paid on the common stock and on any class or series of stock entitled to participate therewith as to dividends out of any assets legally available for the payment of dividends.

In the event of any liquidation, dissolution, or winding up of the savings bank, the holders of the common stock (and the holders of any class or series of stock entitled to participate with the common stock in the distributions assets) shall be entitled to receive, in cash or in kind, the assets of the savings bank available for distribution remaining after: (i) Payment or provision for payment of the savings bank's debts and liabilities; (ii) distributions or provisions for distributions in settlement of its liquidation account; and (iii) distributions or distributions to holders of any class or series of stock having preference over the common stock in the liquidation, dissolution, or winding up of the savings bank. Each share of common stock shall have the same relative rights as and be identical in all respects with all the other shares of common stock.

B.    Preferred stock. The savings bank may provide in supplementary sections to its charter for one or more classes of preferred stock, which shall be separately identified. The shares of any class may be divided into and issued in series, with each series separately designated so as to distinguish the shares thereof from the shares of all other series and classes. The terms of each series shall be set forth in a supplementary section to the charter. All shares of the same class shall be identical except as to the following relative rights and preferences, as to which there may be variations between different series:

(a)    The distinctive serial designation and the number of shares constituting such series;

(b)    The dividend rate or the amount of dividends to be paid on the shares of such series, whether dividends shall be cumulative and, if so, from which date(s) the payment date(s) for dividends, and the participating or other special rights, if any, with respect to dividends;

(c)    The voting powers, full or limited, if any, of such shares of such series;

(d)    Whether the shares of such series shall be redeemable and, if so, the price(s) at which, and the terms and conditions on which such shares may be redeemed;

(e)    The amount(s) payable upon the shares of such series in the event of voluntary or involuntary liquidation, dissolution, or winding up of the savings bank;

(f)    Whether the shares of such series shall be entitled to the benefit of a sinking or retirement fund to be applied to the purchase or redemption of such shares, and if so entitled, the amount of such fund and the manner of

053113-1011-00697-988KWON-DTS

its application, including the price(s) at which such shares may be redeemed or purchased through the application of such fund;

(g) Whether the shares of such series shall be convertible into, or exchangeable for, shares of any other class or classes of stock of the savings bank and, if so, the conversion price(s) or the rate(s) of exchange, and the adjustments thereof, if any, at which such conversion or exchange may be made, and any other terms and conditions of such conversion or exchange;

(h) The price or other consideration for which the shares of such series shall be issued; and

(i) Whether the shares of such series which are redeemed or converted shall have the status of authorized but unissued shares of serial preferred stock and whether such shares may be reissued as shares of the same or any other series or serial preferred stock.

Each share of each series of serial preferred stock shall have the same relative rights as and be identical in all respects with all the other shares of the same series.

The board of directors shall have authority to divide, by the adoption of supplementary charter sections, any authorized class of preferred stock into series, and, within the limitations set forth in this section and the remainder of this charter, fix and determine the relative rights and preferences of the shares of any series so established.

Prior to the issuance of any preferred shares of a series established by a supplementary charter section adopted by the board of directors, the savings bank shall file with the Secretary to the Office a dated copy of that supplementary section of this charter established and designating the series and fixing and determining the relative rights and preferences thereof.

SECTION 6. Preemptive rights. Holders of the capital stock of the savings bank shall not be entitled to preemptive rights with respect to any shares of the savings bank which may be issued.

SECTION 7. Directors. The savings bank shall be under the direction of a board of directors. The authorized number of directors, as stated in the savings bank's bylaws, shall not be fewer than five nor more than fifteen, except when a greater or lesser number is approved by the Director of the Office, or his or her delegate.

SECTION 8. Amendment to charter. Except as provided in Section 5, no amendment, addition, alteration, change or repeal of this charter shall be made, unless such is proposed by the board of directors of the savings bank, approved by the shareholders by a majority of the votes eligible to be cast at a legal meeting, unless a higher vote is otherwise required, and approved or pre-approved by the Office.

5

ATTEST:

_____
Secretary

ATTEST:

_____
Corporate Secretary of the Office
of Thrift Supervision

LEHMAN BROTHERS BANK, FSB

By: _____
President

OFFICE OF THRIFT SUPERVISION

_____
Scott M. Albinson, Managing Director
Office of Supervision

Effective Date: _____June 30_____, 1999

053113-1918-06537-993K8VCH-OTS

APR 22 2004 10:47 FR BUFF VISION          2020007042 TO 12125400000          P.02

## OFFICE OF THRIFT SUPERVISION

### Order Approving Application To Establish Operating Subsidiaries

Order No:    2004-19
Date:        April 22, 2004
Docket Nos:  06069, H-3463, H-3497

Lehman Brothers Bank, FSB, Wilmington, Delaware (Savings Bank), a federal stock savings bank, has filed an application with the Office of Thrift Supervision (OTS), pursuant to 12 U.S.C. § 1828(m) and 12 C.F.R. § 559.11, requesting approval to establish four operating subsidiaries. The Savings Bank proposes to acquire the following four companies from its parent holding company: ALS Holding Inc., Aurora, Colorado (ALS Holding), and its subsidiary, Aurora Loan Services, Inc., Aurora, Colorado (Aurora), and BNC Holdings, Inc., Irvine, California (BNC Holdings), and its subsidiary, BNC Mortgage, Inc., Irvine, California (BNC) (collectively, the Operating Subsidiaries). In addition, the Savings Bank has provided notice to OTS of the proposed transaction in order to claim the internal corporate reorganization exemption, set forth at 12 C.F.R. § 223.41, from certain transactions with affiliate restrictions.

**Background**

The Savings Bank is a wholly owned, direct subsidiary of Lehman Brothers Bancorp Inc. (Bancorp), which is a wholly owned direct subsidiary of Lehman Brothers Holdings Inc. (Holding Company). As of December 31, 2003, the Savings Bank had total assets of $14.2 billion, total liabilities of $13.0 billion, and total equity capital of $1.2 billion. As of such date, the Savings Bank was well capitalized, under OTS regulations,[1] with a tangible capital ratio of 8.35 percent and a total risk-based capital ratio of 13.07 percent.

The Holding Company currently owns all of ALS Holding's outstanding stock. ALS Holding, a Delaware corporation, is a shell holding company that engages in no activities other than holding all of Aurora's stock. Aurora, a Delaware corporation located in Aurora, Colorado, is a mortgage banking company.

The Holding Company currently owns 87.5 percent of BNC Holdings' stock. BNCM Acquisition Company, LCC (BNCAC), whose members are the senior management of BNC Holdings, holds the remaining 12.5 percent. BNC Holdings, a Delaware corporation, is a shell holding company that engages in no activities other than holding all of the common stock of BNC. BNC, a Delaware corporation located in Irvine, California, is a mortgage banking company.

---

[1] 12 C.F.R. § 565.4(b)(1) (2003).

APR 22 2004 10:17 FR SUPERVISION        2028867042 TO 3125488009        P.99

Order No. 2004-19
Page 2

## The Proposed Transaction

In the proposed transaction, the Holding Company will contribute the stock that it owns in ALS Holding and BNC Holdings to Bancorp, which will immediately thereafter transfer the stock to the Savings Bank. Upon consummation, the Savings Bank will own all of the common stock of ALS Holding, which will be a first-tier operating subsidiary of the Savings Bank. ALS Holding will continue to own all of the common stock of Aurora, which will be a second-tier operating subsidiary of the Savings Bank. Also, the Savings Bank will own 87.5 percent of the common stock of BNC Holdings, which will be a first-tier operating subsidiary of the Savings Bank. BNC Holdings will continue to own all of the common stock of BNC, which will be a second-tier operating subsidiary of the Savings Bank.

## Operating Subsidiary Application

Generally, a federal savings association may invest in an operating subsidiary only if: (1) the subsidiary engages only in activities permissible for federal associations to engage in directly; (2) the federal association owns, directly or indirectly, more than 50 percent of the voting shares of the operating subsidiary; and (3) no person or entity other than the federal association exercises operating control over the operating subsidiary.[1] In addition, OTS may, at any time, limit a savings association's investment in operating subsidiaries, or may limit or refuse to permit any activities of an operating subsidiary, for supervisory, legal, or safety and soundness reasons.[2]

With regard to the requirement that the subsidiary may engage only in activities permissible for federal associations to engage in directly, ALS Holding and BNC Holdings engage in no business activities other than holding the stock of their respective subsidiaries, Aurora and BNC. Aurora and BNC will engage in mortgage loan origination and servicing activities, which are permissible for federal savings associations. Accordingly, OTS concludes that the Operating Subsidiaries' proposed activities are permissible for a federal association.

With regard to the requirement that the federal association own, directly or indirectly, more than 50 percent of the voting shares of the operating subsidiary, the application indicates that each of the Operating Subsidiaries will satisfy this requirement. The Savings Bank will hold all of the common stock of ALS Holding and indirectly, through ALS Holding, own all of the stock of Aurora. In addition, the Savings Bank will hold 87.5 percent of the common stock of BNC Holdings, which owns all of the stock of BNC. OTS concludes that the Savings Bank will own, directly or indirectly, more than 50 percent of the voting shares of each of the Operating Subsidiaries. With regard to the requirement that no person or entity other than the federal association exercises operating control over the operating subsidiary, the application indicates that no other party will have operating control over the Operating Subsidiaries.

---

[1] 12 C.F.R. § 559.2, 559.1(c)(1), and (c)(1) (2003).
[2] 12 C.F.R. § 559.1(c) (2003).

APR 22 2004 10:47 FR SUPERVISION          2028067842 TO "2125488889          P.04

Order No.: 2004-19
Page: 3

Based on its regulatory experience with the Holding Company and the Savings Bank, OTS concludes that the Savings Bank has the requisite experience and expertise to manage the Operating Subsidiaries, and OTS concludes that it has no supervisory objections to the proposed transaction, provided the conditions set forth below are satisfied.

**Transaction With Affiliates Notice**

Because the proposed transfer of the stock of the Operating Subsidiaries to the Savings Bank is a covered transaction pursuant to § 23A of the Federal Reserve Act and 12 C.F.R. § 563.41, which incorporates certain provisions of the Federal Reserve Board's Regulation W, 12 C.F.R. Part 223, the application provides notice to OTS that the proposed transaction will satisfy the internal corporate reorganization exemption requirements of 12 C.F.R. § 223.41(d) and will therefore be exempt from the quantitative limits set forth at 12 C.F.R. §§ 223.11 and 223.12 and the collateral requirements set forth at 12 C.F.R. § 223.14.

The notice indicates that the proposed transaction satisfies the seven requirements for obtaining the exemption, which are set forth at 12 C.F.R. § 223.4(d)(1)-(d)(7). The proposed transaction is part of an internal corporate reorganization of the Holding Company and involves the transfer of all or substantially all of the shares of the Operating Subsidiaries, which are currently affiliates, to the Savings Bank. The Savings Bank has provided written notice to OTS, before consummation of the proposed transaction, and has provided a description of the proposed business activities of the Operating Subsidiaries and the proposed date of the transaction. The Holding Company has provided a written commitment stating that it commits to either (i) make quarterly cash contributions to the Savings Bank for two years, equal to the book value plus any write-downs on assets that become low quality during the quarter, or (ii) to repurchase on a quarterly basis for two years at a price equal to the book value plus any write-downs on assets that become low quality during the quarter. The Savings Bank's board of directors has reviewed and approved the proposed transaction.

Furthermore, based on the materials provided with the application and other materials available to OTS, OTS concludes that the value of the proposed transaction represents less than 10 percent of the Savings Bank's capital stock and surplus. The Savings Bank has not previously obtained the corporate reorganization exemption. Finally, based on its regulatory experience with the Holding Company, Bancorp, and the Savings Bank, OTS concludes that these entities are well-capitalized and well-managed and would remain well-capitalized and well-managed upon consummation of the proposed transaction. Based on the foregoing, OTS concludes that the proposed transaction satisfies the requirements for the internal corporate reorganization exemption, under 12 C.F.R. Part 563.41 and § 223.41(d).

**Conclusions**

Based on the foregoing analysis and the commitments provided in the application, OTS concludes that the application meets the applicable approval criteria, provided that the following

APR 22 2004 10:48 FR SUPERVISION            2029087042 TO  ***125488888            P.05

Order No. 2004-19
Page: 4

conditions are imposed. Accordingly, the application is hereby approved, provided that the following conditions are complied with in a manner satisfactory to the OTS Northeast Regional Director, or his designee (Regional Director):

1.  The Savings Bank and the Holding Company must receive all required regulatory approvals and submit copies of all such approvals to the Regional Director prior to consummation of the proposed transaction;

2.  The proposed transaction must be consummated within six months from the date of this Order;

3.  On the business day prior to the date of consummation of the proposed transaction, the chief financial officers of the Savings Bank and the Holding Company must certify in writing to the Regional Director that no material adverse changes have occurred with respect to the financial condition or operations of the Savings Bank, ALH Holding, Aurora, BNC Holdings, and BNC, as disclosed in the application. If additional information having a material adverse bearing on any feature of the application is brought to the attention of the Savings Bank, the Holding Company, or OTS since the date of the financial information submitted with the application, the transaction must not be consummated, unless the information is presented to the Regional Director, and the Regional Director provides written non-objection to consummation of the transaction;

4.  The Savings Bank and the Holding Company must advise the Regional Director in writing within 5 calendar days after the effective date of the proposed transaction: (a) of the effective date of the proposed transaction; and (b) that the transaction was consummated in accordance with all applicable laws and regulations, the application, and this Order; and

5.  The Operating Subsidiaries must not deviate materially from any of the activities, facts, representations or commitments described in the application, except with the prior written non-objection of the Regional Director.

Any time specified herein may be extended by the Regional Director, for good cause, for up to 120 calendar days.

By Order of the Director of the Office of Thrift Supervision, or his designee, effective

_April 22, 2004_

Scott M. Albinson
Managing Director
Examination, Supervision and Consumer Protection

** TOTAL PAGE.05 **

## SECRETARY'S CERTIFICATE

The undersigned, the Secretary of Lehman Brothers Bank, FSB, a federally chartered savings bank (the "Bank"), does hereby certify that Aurora Loan Services LLC is a wholly-owned subsidiary of the Bank.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Bank's seal this 16th day of March, 2006.

(SEAL)

Lehman Brothers Bank, FSB

Lloyd M. Winans
Secretary

Office of Thrift Supervision ( ~ititution Search                                    Page 1 of 3

## Institution Search                                                    Data Se

# Lehman Brothers Bank, FSB

| Docket # | Region | Charter | Cycle | Assets (000s) |
|---|---|---|---|---|
| 06069 | Northeast | SAIF-Ins Fed Stk SB | 09/2008 | $7,207,117 |

**Contact Information**

|  |  |
|---|---|
| Phone: | 2125264322 |
| Fax: | 6460340296 |
| URL: | http://www.lehmanbrothersbank.com |
| Location: | 921 N Orange St<br>Wilmington, DE 198011643 |
| Mailing Address: | 745 Seventh Avenue, 19th Floor<br>New York, NY 100100000 |
| Officer: | Mr Steven Korell<br>Vice President / Counsel |

**Holding Companies**

| Name | City, State | Charter Type | Status |
|---|---|---|---|
| Lehman Brothers Bancorp, Inc. | New York, NY | SAIF-Ins Fed Stk SB | ACTIVE |

**Enforcements**

| Order Number | Issue Date | City, State | Type |
|---|---|---|---|

**Applications**

| Order Number | Type | Decision |
|---|---|---|

Institution l

Holding Cor

Application

Enforcemer

CRA Search

Related Org

Annual Rep

Community

Consumer l

Data Searcl

Financial Re

Handbooks

HMDA

Office of Thrift Supervision Institution Search

| | | | |
|---|---|---|---|
| R1-2008-0157 | OPERATIONS | DENIED | Industry Pe |
| Filed: 07/18/2008 | Decision: 08/28/2008 | | |
| R1-2008-0026 | SUBSIDIARY | WITHDRAWN | Monthly Ma |
| Filed: 02/12/2008 | Decision: 08/20/2008 | | Mortgage M |
| R1-2008-0021 | OPERATIONS | APPROVED | |
| Filed: 01/31/2008 | Decision: 02/27/2008 | | Performanc |
| R1-2007-0299 | BRANCH | APPROVED | Regional Qu |
| Filed: 09/17/2007 | Decision: 10/17/2007 | Effective: 12/15/2007 | |
| R1-2006-0305 | MERGER | APPROVED | Statistical R |
| Filed: 10/31/2006 | Decision: 01/18/2007 | Effective: 02/15/2007 | Strategic Pl |
| R1-2006-0306 | OPERATIONS | APPROVED | |
| Filed: 10/31/2006 | Decision: 01/18/2007 | | Thrift Finan |

## CRA History

| Start Date | Release Date | Rating | Document |
|---|---|---|---|
| 08/14/2006 | 03/2007 | Outstanding | CRAE_06069_20060814_64.rtf |
| 01/28/2004 | 09/2004 | Satisfactory | CRAE_06069_20040128_64.rtf |
| 04/24/2000 | 09/2000 | Satisfactory | CRAE_06069_20000424_60.rtf |
| 07/28/1997 | 11/1997 | Satisfactory | CRAE_06069_19970728_60.rtf |
| 05/30/1995 | 09/1995 | Satisfactory | CRAE_06069_19950530_60.rtf |
| 02/07/1994 | 06/1994 | Satisfactory | CRAE_06069_19940207_60.rtf |
| 02/01/1993 | 04/1993 | Satisfactory | CRAE_06069_19930201_60.rtf |

## Related Organization

| Organization | Type |
|---|---|
| AURORA LOAN SERVICES INC. | SUB |
| BNC MORTGAGE, INC. | SUB |
| CAMPUS DOOR | SUB |
| CAP CAR I, LLC | SUB |
| CAPITAL CROSSING PREFERRED CORP | SUB |
| CAPITAL CROSSING SECURITIES CORP II | SUB |
| CAPX REALTY LLC | SUB |
| DOLCAP INC | SUB |
| Lehman Brothers Bancorp, Inc. | THC |

Office of Thrift Supervision Institution Search                              Page 3 of 3

LEHMAN BROTHERS BANK, FSB                                THR
Lehman Brothers Holdings Inc.                            THC

                                                        1700 G Street,
                                                        Phone (202) 9[
You are entering an official United States government system, which may be used only for authorized purposes.   OTS_Contacts [
Unauthorized modification of any information stored on this system may result in criminal prosecution.

Monitoring and privacy policy statement.

SECRETARY'S CERTIFICATE

The undersigned, the Secretary of Aurora Bank FSB, (the "Bank"), does hereby certify that on April 24th, 2009, the name of the Bank changed from Lehman Brothers Bank, FSB to Aurora Bank FSB.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporation's seal this 24th day of April, 2009.

                                              AURORA BANK FSB

SEAL



                                        By: _Karen Tinkersley_
                                              Karen Tinkersley
                                              Secretary

## PROOF OF SERVICE BY UNITED STATES MAIL

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 725 South Figueroa Street, 38th Floor, Los Angeles, CA 90017.

    On January 5, 2011, I served the following document(s) described as:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the persons below as follows:

Charles T. Marshall, Esq.
LAW OFFICES OF CHARLES T. MARSHALL
415 Laurel Street, Suite 405
San Diego, CA 92101

*Attorneys for Plaintiff, KEITH W. JESKE*

Tel: (619) 807-2628
Email: cmarshall@marshallestatelaw.com

    I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐    deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒    placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United State Postal Service, in a sealed envelope or package with postage fully prepaid.

    I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒    (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐    (Federal)    I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 5, 2011, at Los Angeles, California.

Helen E. Serrano
Type Name

Signature

* (SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX OR BAG)

{LA086373;1}

# EXHIBIT 3

## SECRETARY'S CERTIFICATE

The undersigned, the Secretary of Aurora Bank FSB, (the "Bank"), does hereby certify that on April 24th, 2009, the name of the Bank changed from Lehman Brothers Bank, FSB to Aurora Bank FSB.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Corporation's seal this 24th day of April, 2009.

SEAL

AURORA BANK FSB

By: Karen Tankersley
      Karen Tankersley
      Secretary

# Delaware

PAGE   1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF CONVERSION OF A DELAWARE CORPORATION UNDER THE NAME OF "AURORA LOAN SERVICES INC." TO A DELAWARE LIMITED LIABILITY COMPANY, CHANGING ITS NAME FROM "AURORA LOAN SERVICES INC." TO "AURORA LOAN SERVICES, LLC", FILED IN THIS OFFICE ON THE TWENTY-FIRST DAY OF DECEMBER, A.D. 2004, AT 12:45 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF CONVERSION IS THE FIRST DAY OF JANUARY, A.D. 2005.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 3570767

DATE: 12-22-04

2748860   8100V

040926499

STATE OF DELAWARE
CERTIFICATE OF CONVERSION
FROM A CORPORATION TO
A LIMITED LIABILITY COMPANY
PURSUANT TO SECTION 266 OF
THE DELAWARE GENERAL CORPORATION LAW

1. The name of the corporation immediately prior to filing this Certificate is Aurora Loan Services Inc.

2. The date the Certificate of Incorporation was filed on is May 15, 1997.

3. The original name of the corporation as set forth in the Certificate of Incorporation is Aurora Loan Services Inc.

4. The name of the limited liability company as set forth in the formation is Aurora Loan Services LLC.

5. The conversion has been approved in accordance with the provisions of Section 266.

6. The effective date of this filing shall be January 1, 2005.

By:    *Karen Näe*
Name:    Karen Manson
Secretary

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:00 PM 12/21/2004
FILED 12:45 PM 12/21/2004
SRV 040926499 - 2748860 FILE

Division of Corporations - Online Services                                   Page 1 of 2

Delaware.gov | Text Only                          Governor | General Assembly | Courts | Elected Offici

JOHN DICKINSON PLANTATION [] PHOTO |

## Department of State: Division of Corporations

Frequently Asked Questions   View Search Results

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| | | Incorporation Date / Formation Date: | **05/15/1997** (mm/dd/yyyy) |
| File Number: | 2748860 | | |
| Entity Name: | AURORA LOAN SERVICES LLC | | |
| Entity Kind: | LIMITED LIABILITY COMPANY (LLC) | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | CORPORATION SERVICE COMPANY | | |
| Address: | 2711 CENTERVILLE ROAD SUITE 400 | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19808 |
| Phone: | (302)636-5401 | | |

Additional Information is available for a fee. You can retrieve Status for a
more detailed information including current franchise tax assessment, cui
and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information ⸰Submit⸰

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of
Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &

Division of Corporations - Online Services                                    Page 2 of 2

Authentication of                          Back to Entity Search
Documents

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

# EXHIBIT 3

{DN028472;1}

Ariz. Corp. Comm. -- Corporations Division

Page 1 of 3

## Arizona Corporation Commission
## State of Arizona Public Access System

09/24/2010                                                                 7:56 AM

## Jump To...

| <u>Annual Reports</u> | <u>Scanned Documents</u> | <u>Amendments</u> | <u>Notices of Pending Administrative Dissolution</u> | <u>Administrative Dissolutions and Reinstatements</u> | <u>Microfilm</u> |

E-FILE An Annual Report Online << Click Here

FORMS For Annual Reports To Be Printed And Mailed << Click Here

### Corporate Inquiry

| File Number: -0782633-7   AD-DISSOLVED-FILE ANNUAL REPORT 04/02/2009 | Check Corporate Status |
|---|---|
| Corp. Name: **FIRST MAGNUS FINANCIAL CORPORATION** | |

### Domestic Address

603 N WILMOT RD

TUCSON, AZ 85711

### Statutory Agent Information

Agent Name: C T CORPORATION SYSTEM

Agent Mailing/Physical Address:

2394 E CAMELBACK RD

PHOENIX, AZ 85016

Agent Status: APPOINTED 10/30/2007

Agent Last Updated: 11/01/2007

### Additional Corporate Information

| Corporation Type: PROFIT | Business Type: BANKING/FINANCE |
|---|---|
| Incorporation Date: 07/16/1996 | Corporate Life Period: PERPETUAL |
| Domicile: ARIZONA | County: PIMA |
| Approval Date: 07/17/1996 | Original Publish Date: 08/12/1996 |
| Status: AD-DISSOLVED-FILE ANNUAL | Status Date: 04/02/2009 |

Ariz. Corp. Comm. -- Corporations Division                                    Page 2 of 3

| REPORT | |
|---|---|
| Status: DISSOLUTION IN PROGRESS | Dissolution/Withdrawal Date: 05/30/2008 |

## Officer Information

| | |
|---|---|
| GURPREET S JAGGI<br>PRESIDENT/CEO<br>603 N WILMOT RD<br>TUCSON,AZ  85711<br>Date of Taking Office: 07/01/1996<br>Last Updated: 09/29/2006 | |

## Annual Reports

| Next Annual Report<br>Due: 10/16/2008 | E-FILE An Annual Report Online << Click Here |
|---|---|
| FORMS For Annual Reports To Be Printed And Mailed << Click Here | |

| File<br>Year | File<br>Month | Date<br>Received | Reason Returned | Date Returned | Extension |
|---|---|---|---|---|---|
| 2008 | 10 | 09/04/2008 | REPORT AND CHECK<br>RETURNED | 09/26/2008 | |
| 2007 | 10 | 11/05/2007 | | | |
| 2006 | 10 | 10/06/2006 | | | |
| 2005 | 10 | 08/22/2005 | | | |
| 2004 | 10 | 08/20/2004 | | | |
| 2003 | 10 | 10/15/2003 | | | |
| 2002 | 10 | 10/21/2002 | | | |
| 2001 | 10 | 10/26/2001 | | | |
| 2000 | 10 | 08/28/2000 | | | |
| 1999 | 10 | 10/14/1999 | | | |
| 1998 | 10 | 05/28/1999 | | | |
| 1997 | 10 | 12/19/1997 | | | |
| 1996 | 12 | 07/08/1997 | | | |

Back To Top

## Scanned Documents
**(Click on gray button to view document - will open in a new window)**

| Document<br>Number | Description | Date Received |
|---|---|---|

Ariz. Corp. Comm. -- Corporations Division

| -00133311 | 96 ANNUAL REPORT | 07/08/1997 |
|---|---|---|
| -00147011 | 97 ANNUAL REPORT | 12/19/1997 |
| -00308609 | 98 ANNUAL REPORT | 05/28/1999 |
| 00069556 | 99 ANNUAL REPORT | 10/14/1999 |
| 00178291 | 00 ANNUAL REPORT | 08/28/2000 |

## PROOF OF SERVICE BY OVERNIGHT DELIVERY COURIER

STATE OF COLORADO, CITY AND COUNTY OF DENVER

I am employed in the City and County of Denver, State of Colorado; I am over the age of 18 years and not a party to this action. My business address is 511 Sixteenth Street, Suite 420, Denver, Colorado 80202.

On September 27, 2010, I served the following document(s) described as:

### NOTICE OF REMOVAL TO FEDERAL COURT

by enclosing the documents in an envelope or package provided by an overnight delivery carrier and addresses to the persons at the addresses as stated below:

Thomas Harrison
Thomas Patrick Hoyman
Jennifer Hoyman
Joan Hoyman
1351 Pleasantridge Drive
Altadena, CA 91001

☒   BY FEDERAL EXPRESS *

☐   BY EXPRESS MAIL USPS *

☐   BY FAX *

I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐  (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  (Federal)   I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 27, 2010, at Denver, Colorado.

Kristine L. Elliott
Type Name

_Kristine Elliott_
Signature

AKERMAN SENTERFITT LLP
725 S. FIGUEROA STREET, SUITE 3800
LOS ANGELES, CALIFORNIA 90017
TEL: (213) 688-9500 – FAX: (213) 627-6342

# EXHIBIT 4

# Case Summary

**Case Number:** GC046621
JOAN HOYMAN VS. FIRST MAGNUS FINANCIAL CORP; GAYLE JAMESON

**Filing Date:** 01/05/2011
**Case Type:** Quiet Title (General Jurisdiction)
**Status:** Pending

---

## Future Hearings

**05/24/2011** at 08:30 am in department R at 300 East Walnut Ave., Pasadena, CA
91101
Conference-Case Management

---

Documents Filed | Proceeding Information

## Parties

AURORA LOAN SERVICES - Defendant

COUNTRYWIDE HOME LOANS/BANK OF AMERICA - Defendant

DOES 1-100 - Defendant

FIRST MAGNUS FINANCIAL CORP; - Defendant

HOYMAN JOAN - Plaintiff, & Plaintiff in Pro Per

JAMESON GAYLE - Defendant

MCCARTHY & HOLTHUS - Defendant

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS - Defendant

---

Case Information | Party Information | Proceeding Information

## Documents Filed (Filing dates listed in descending order)

**01/05/2011** Complaint Filed

**01/05/2011** Ex-Parte Application
Filed by Plaintiff & Plaintiff in Pro Per

---

Case Information | Party Information | Documents Filed

## Proceedings Held (Proceeding dates listed in descending order)

**01/05/2011** at 08:30 am in Department R, C. EDWARD SIMPSON, Presiding
Ex-Parte Application - **Denied**

---

Case Information  |  Party Information  |  Documents Filed  |  Proceeding Information